**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|  |  |
|---|---|
| **MARILYN MOORE, individually, and GEO-ENVIRON ENGINEERING, INC., a GEORGIA corporation,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**FULTON COUNTY, GEORGIA**<br><br>**Defendant.** | **1:05-cv-2502-WSD** |

**OPINION AND ORDER**

This matter is before the Court on Defendant Fulton County's

("Defendant" or "the County") Motion for Summary Judgment ("Def. MSJ"). [29]

## I.    BACKGROUND

This action arises from a dispute between Plaintiffs Marilyn Moore, Geo-

Environ Engineering, Inc. ("Plaintiffs") and Defendant over Defendant's

termination of Plaintiffs' participation in the County's Private Professional

Inspection Program ("PPIP" or "program").  The PPIP allows private individuals,

rather than County inspectors, to conduct construction completion and occupancy

permit inspections of new homes.  Participation in the program is voluntary.

Plaintiff Moore is a licensed professional engineer, and her corporation, Geo-Enviro Engineering, participated in the PPIP from 1995 until 2004.  The PPIP was supervised by Defendant's employees Lee Peek and Mary Upshaw.  Ibrahim Maslamani, the County's Deputy Director of Environmental and Community Development, had oversight over the program.

In 2000, Defendant began requiring PPIP participants to measure setbacks in the new home inspections they conducted.  Setbacks are the distance between property lines and the foundations of a home.  On various occasions, Plaintiff Moore expressed to Defendant her opinion that the setback measuring requirement was not allowed to be performed by engineers because it required engineers to perform the work of a surveyor, without a surveyor's license.  In 2001, Moore and other unnamed engineers sent a letter requesting a meeting with Upshaw and Maslamani to discuss these concerns.  Moore also asked the State Licensing Board ("the Board") to provide formal written guidance on whether an engineer is allowed to measure setback distances.  In November 2001, the Board issued a letter stating that the act of verifying zoning setbacks constitutes land surveying activity, and engineers who engage in this activity are in violation of Georgia law unless they are a licensed surveyor.

-2-

In June 2004, an issue arose regarding the setback of a property that Plaintiff Moore and her company inspected.  In an email exchange with Lee Peek, Moore stated that she would no longer check setback lines when performing new home inspections.  Peek responded that Moore, to remain a participant in the program, was required to measure setback distances, and if setbacks were not measured, her participation in the program would be discontinued.  When Moore continued to refuse to measure setbacks, Peek removed Plaintiffs from the PPIP.

On September 27, 2005, Plaintiffs filed this Complaint.  Plaintiffs assert claims for violation of their due process rights, violation of their First Amendment rights under 42 U.S.C. § 1983, state law retaliation under O.C.G.A. § 45-1-4, and breach of contract.  (Compl. [1].)  Defendant filed its Answer on December 5, 2005.  (Answer [3].)  On July 13, 2006, Defendant filed this Motion for Summary Judgment, arguing that Plaintiffs' claims fail as a matter of law. (Def. MSJ [29], at 5.)

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor.  United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990).  "[C]redibility determinations, the weighing of evidence,

and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

     B.    Plaintiffs' Claim for Violation of Due Process Rights

     Defendant first argues that Plaintiffs' claim for violation of their procedural due process rights fails because Plaintiffs have not shown a binding agreement with Fulton County, therefore they do not have a property interest in their participation in the PPIP.[1]  Plaintiffs argue that all the elements of a contract

---

[1] Plaintiffs' Complaint mentions, but does not articulate, a substantive due process claim.  (Def. MSJ, at 5 n.2; Compl., at ¶ 23.)  Plaintiffs do not explain, in their Complaint or in the Response to Defendant's Motion for Summary Judgment, how their substantive due process rights were violated.  See McKinney v. Pate, 20 F.3d 1550, 1560 (11th Cir. 1995) ("Supreme Court precedent demonstrates that an employee with a property right in employment is protected only by the procedural component of the Due Process Clause, not its substantive component.  Because employment rights are state-created rights and are not "fundamental" rights created by the Constitution, they do not enjoy substantive due process protection.").  Plaintiffs do not even mention substantive due process in their Response, and they do not come forward with any evidence supporting their substantive due process

between the parties were present, that they had a property interest in the program, and they are entitled to assert a procedural due process claim against Defendant based on their termination.  (Pl. Resp. to Def. MSJ [37], at 7.)

"The initial question with any due process challenge is whether the injury claimed by the plaintiff is within the scope of the Due Process Clause.  The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Behrens v. Regier, 422 F.3d 1255, 1259 (11th Cir. 2005) (quotations and citations omitted).  In this case, the issue is whether Plaintiffs have "sufficiently alleged the deprivation of a constitutionally protected property interest, such that the procedural guarantees of the Due Process Clause have been triggered."  Id.  The Court finds Plaintiffs have not met this minimal requirement.

---

claim and why it should survive summary judgment.  (Pl. Resp. to Def. MSJ [37], at 6-8).  In the absence of a response to Defendant's summary judgment motion on Plaintiffs' substantive due process claim, the Court finds Plaintiffs have abandoned it, and it is appropriate to grant summary judgment on the claim.  See Bute v. Schuller Int'l, Inc., 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) ("Because plaintiff has failed to respond to this argument or otherwise address this claim, the Court deems it abandoned."); Welch v. Delta Air Lines, Inc., 978 F. Supp. 1133, 1137 (N.D. Ga. 1997) ("Plaintiff's failure to respond to Defendant's argument alone entitles Defendant to summary judgment on these claims.").

"In order to prevail on a procedural due process claim alleging a deprivation of a property interest, the plaintiffs must prove: (1) a constitutionally protected property interest in their employment; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of state procedures accompanying the alleged deprivation."  Allocco v. City of Coral Gables, 221 F. Supp. 2d 1317, 1379 (S.D. Fla. 2002).  "Property interests stem not from the Constitution, but from such sources as statutes, regulations, ordinances, and contracts.  Whether these sources create a property interest must be decided by reference to state law."  Arrington v. Helms, 438 F.3d 1336, 1348 (11th Cir. 2006); see also Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972) ("A person clearly must have . . . more than a unilateral expectation of [a property interest].  He must, instead, have a legitimate claim of entitlement to it. . . . Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."); Allocco, 221 F. Supp. 2d at 1379 (holding that plaintiff university public safety officers had no property interest in their employment with the university because, under Florida law, they were at will employees, were not covered by a Florida statute protecting

police officers, and the contract between the city and the university did not require that their employment only be revoked for due cause).[2]

"The Supreme Court in <u>Logan v. Zimmerman Brush</u>, 455 U.S. 422 (1982), provided useful guidance for determining what interests constitute 'property' as envisioned by the Fourteenth Amendment.  In that case the Court remarked that the hallmark of property is an individual entitlement grounded in state law, which

_____

[2] Even in a formal employer/employee relationship, an employee's procedural due process rights can be implicated, in the absence of a formal contract, only where there is "a clearly implied promise of continued employment." <u>Roth</u>, 408 U.S. at 577 (citing <u>Connell v. Higginbotham</u>, 403 U.S. 207, 208 (1971)); <u>see also</u> <u>Faucher v. Rodziewicz</u>, 891 F.2d 864, 869 (11th Cir. 1990) (noting that the absence of a formal contract does not automatically dispose of a plaintiff's procedural due process claim because a legitimate claim may arise from "mutually explicit understandings"); <u>Perry v. Sindermann</u>, 408 U.S. 593, 601-02 (1972) (noting that a teacher who has held his position for several years might show a legitimate claim of entitlement to job tenure due to his length of service and other facts because, for example, the law of contracts in most jurisdictions has recognized implied contracts, and explicit contractual provisions may be supplemented by other agreements implied from the promisor's words and conduct in light of the surrounding circumstances).
The Supreme Court has held that public employees have a property interest in continued employment that is safeguarded by due process where a public employee was dismissed from his tenured position, which under New York law could not be terminated except for cause, and where employees were dismissed during the terms of their contracts.  <u>Roth</u>, 408 U.S. at 577 (citing <u>Slochower v. Bd. of Educ.</u>, 350 U.S. 551 (1956) and <u>Wieman v. Updegraff</u>, 344 U.S. 183 (1952)). Plaintiffs are not employees of the County–they are private entities who performed engineering services for clients through their  participation in the PPIP.

cannot be removed except for cause." Economic Dev. Corp. v. Stierheim, 782 F.2d 952, 954 (11th Cir. 1986) (citations and quotations omitted) (holding that a development corporation did not have a property interest in its contract with a county where the terms of the contract allowed it to be terminated at the convenience of either party); see also Key West Harbour Dev. Corp. v. City of Key West, Fla., 987 F.2d 723, 727 (11th Cir. 1993) (noting that "[u]nder Florida law, a statute, ordinance, contract, policies and practices of an institution *which support claims of entitlement* may create a property interest," but the mere existence of an enforceable contract with a state or local government entity does not give rise to a constitutionally protected property interest on its own); Braden v. Texas A & M Univ. Sys., 636 F.2d 90, 93 (5th Cir. 1981) ("If the state had merely breached a contract with [plaintiff] he would have had no cause of action under Section 1983. Relief is predicated on a denial of a constitutional right.").

In this case, Plaintiffs are private individuals who do not have an enforceable contract under Georgia law, and do not otherwise have a  constitutionally protected property interest which has been denied or violated.  Plaintiffs acknowledge that Georgia law requires that "all contracts entered into by the governing authority with other persons in behalf of the county shall be in writing and entered on its

minutes."  O.C.G.A. § 36-10-1.  "[T]he law is clearly established that in order to be enforceable, a contract with a county must be in writing."  Twiggs County v. Oconee Elec. Membership. Corp., 536 S.E.2d 553, 554 (Ga. App. 2000).  In their Response, Plaintiffs concede that the requirements of this statute must be met in order for a party to seek enforcement or recover monies due under a contract.  (Pl. Resp. to Def. MSJ, at 7.)  Plaintiffs, however, argue that despite the requirements under O.C.G.A. § 36-10-1 for the formation of public contracts, which have not been met here, "for the purpose of giving rise to an abridgement of constitutional rights," the elements necessary for a contract are met.  (Id.)  Plaintiffs rely solely on a case headnote in Twiggs County to support their claim.  (Id. n. 4).  The Court of Appeals' holding in Twiggs County does not support Plaintiffs' position.

In Twiggs County, the plaintiff county asked the defendant company to move utility lines affected by certain road improvement projects.  Twiggs County, 536 S.E.2d at 553.  Over several years, at the county's request, but without a contract between the parties, the defendant moved utility lines on several roads and billed the county for the expense.  Approximately nine years after the project began, the county's Board of Commissioners finally voted to pay the bills submitted by the defendant, and the vote to approve payment was recorded in the

county's minutes.  After payment was approved, the county paid the invoice.

Approximately three years later, the Board decided that in the absence of a contract

for defendant's services, its payments had been improper.  The county filed suit

against the defendant to recover the payments, arguing, among other things, that

the approval of the payments for the pole removal was invalid and void because it

was not in writing and was not entered on the county minutes.  Id. at 554.

The Court of Appeals agreed that Georgia law requires counties to put

contracts in writing and record them in their minutes and found that had not been

done.  While recovery of the payment was not allowed, the Court of Appeals based

its decision on the unique facts before it, determining that the equitable doctrine of

voluntary payments precluded the county from arguing that the provisions of

O.C.G.A. § 36-10-1 were not followed when it paid the amounts and waited more

than two years to file suit to recover the money.  Id. at 555.  The Court explained:

"We emphasize this is not a case in which [a] party seeks to enforce a contract for

payment against the county based on an alleged contract with the county.  In that

context, these essential requirements of a valid contract with the county cannot be

waived.  In the context of such an action, the rule that an agreement must be in

writing is absolute and applicable to every contract made with the county." Id. (citations and quotations omitted).

Plaintiffs' reliance on Twiggs County for their claim to a property interest in their participation in the PPIP is misplaced.  To the contrary, Twiggs County held that a written contract recorded in a county's board minutes is required for a contract to be enforceable and that absent those requirements being met, a party does not have a contract.  The case does not support Plaintiffs' argument that despite the absence of a contract, they have developed a property interest in their continued membership in the PPIP.  Twiggs County is the only case cited by Plaintiffs in support of their argument.  It simply does not support the position advanced by Plaintiff in this case.[3]

Plaintiffs also do not identify any contract law or principle, or other state statute or common law that limits Defendant's discretion to exclude Plaintiffs from the program.  Plaintiffs do not put forth evidence of circumstances showing an implied contract between the parties limiting Defendant's discretion to dismiss

---

[3] See Circa Ltd. v. City of Miami, 79 F.3d 1057, 1062 (11th Cir. 1996) ("We believe that a due process theory is questionable if it is simply used to plug a gap in a potential contract claim by recourse to the Constitution.").

them from the program.  They do not point to any authority for their claim that

they had a property interest in their continued participation in the program, i.e., that

they had an "individual entitlement grounded in state law" in the PPIP "which

cannot be removed except for cause."  Plaintiffs fail to identify how their

elimination from the program was either contrary to Georgia law or inconsistent

with Defendant's obligations under the PPIP.[4]  Plaintiffs simply have not met their

burden to come forward with evidence to support their procedural due process

claim, nor have they designated specific facts showing a genuine issue of material

---

[4] The document submitted by Plaintiffs entitled "Private Professional
Inspection Program and Procedures" (the "program procedures") states, under the
heading of "Penalties for Violation of Procedures," that an independent body of
professionals selected by the county will hear appeals from any individual who
feels that he or she was dismissed without due cause.  (Procedures Document,
attached to Filing by Plaintiffs in Opposition to MSJ [40] as Ex. E, at 11.)  The
program description does not specifically state that members may only be
dismissed for cause.  Furthermore, Plaintiffs do not argue that the program
description gives them a property interest in their participation in the program, and
the Court finds that the document does not give the participants such an interest.
While Plaintiff Moore asserts that she is unaware of a review board ever having
been established to hear appeals from disciplinary actions against individual
members, she does not submit any evidence that she sought, through any
procedure, to appeal or challenge Plaintiffs' dismissal from the program.  (Moore
Aff., attached to Filing by Plaintiffs in Opposition to MSJ [40] as Ex. Q, at ¶ 9.)

facts requiring a trial of this matter.  Defendant's Motion for Summary Judgment

on Plaintiffs' procedural due process claims is granted.[5]

C.     Plaintiffs' First Amendment Claims Under 42 U.S.C. § 1983

Plaintiffs next allege that their free speech rights under the First Amendment

and right to petition for redress of grievances were violated when they were

terminated from the program.  (Compl., at ¶¶ 33-34.)  Defendant argues that Fulton

County cannot be held liable for Lee Peek's decision to terminate Plaintiffs from

the PPIP or Maslamani's approval of the decision.  (Def. MSJ,

at 6-7.)

There is no respondeat superior liability under § 1983.  Griffin v. City of

Opa-Locka, 261 F.3d 1295, 1307 (2001).  To sue a municipality under § 1983, "the

plaintiff has the burden to show that a deprivation of constitutional rights occurred

as a result of an official government policy or custom."  Cooper v. Dillon, 403 F.3d

1208, 1221 (11th Cir. 2005); see also Monell v. Dep't of Social Servs., 436 U.S.

---

[5]  The Court notes that Plaintiffs could have continued in the program by
acquiring a surveyor's license or engaging a surveyor to assist in the inspections.
There does not appear to be any requirement in the program procedures that
engineers had to perform the setback measurements themselves.  Plaintiffs appear
to have elected not to take action to overcome the restrictions they claim were
imposed on them as engineers.

658, 690 (1978).  A local government body is liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ."  Monell, 436 U.S. at 694.  "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality.  A custom is a practice that is so settled and permanent that it takes on the force of law." Cooper, 403 F.3d at 1221 (quotation and citations omitted).

"This threshold identification of a custom or policy ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or those officials whose acts may fairly be said to be those of the municipality."  McDowell v. Brown, 392 F.3d 1283, 1290 (11th Cir. 2004).  "State and local positive law[6] determine whether a particular official has final policymaker authority for § 1983 purposes." Cooper, 403 F.3d at 1221 (finding the police chief's actions subjected defendant city to municipal

---

[6]  In Cooper, the Eleventh Circuit looked to the Florida Constitution, Florida state statutes, and city ordinances in examining "state and local positive law" to determine whether the police chief had final policymaking authority.  Cooper, 403 F.3d at 1221.

liability because a city ordinance gave the chief powers pursuant to a delegation of municipal power in the Florida Constitution and there were other state statutes indicating that police chiefs in the state have final policymaking authority in their respective municipalities for law enforcement matters).

"[M]unicipal liability under § 1983 attaches where–and only where–a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986); see also Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994) ("Only those municipal officers who have final policymaking authority may by their actions subject the government to § 1983 liability."); Brown, 923 F.2d at 1481 (stating that once the policymakers have been identified, it is for the jury to decide whether *their* decisions have caused the deprivation of rights at issue by . . . acquiescence in a long-standing practice or custom which constitutes the standard operating procedure of the local government entity); Jett v. Dallas Ind. Sch. Dist., 491 U.S. 701, 737 (1989) ("[Identifying final policymakers] is itself a legal question [for] the trial judge . . . . Reviewing the relevant legal materials, including state and local positive law, as well as custom or usage having the force

of law, the trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the [alleged] constitutional or statutory violation at issue.").

"There are three ways to show a governmental policy or custom: 1) an express policy; 2) a widespread practice that is so permanent and well-settled as to constitute a custom; or 3) the act or decision of a municipal official with final policy-making authority." Hyath v. City of Decatur, 2006 U.S. Dist. LEXIS 21184, at * 29-30 (N.D. Ga. 2006). The issue here is whether Mr. Peek or Mr. Maslamani possessed final policymaking authority over the PPIP such that Fulton County could be held liable for their actions.

Defendant argues that because Plaintiffs do not allege that the actions were taken pursuant to a policy of Defendant, it may not be held liable because neither Mr. Peek nor his supervisor, Mr. Maslamani, had final decision-making authority over the program. (Def. MSJ, at 9.) Defendant argues that because the policies and procedures of the PPIP provide for a review by an independent body of professionals of the dismissal of any individual who feels she was dismissed without due cause, Peek and Maslamani did not have final policymaking authority and thus could not subject Fulton County to liability. (Id. at 10.) Plaintiffs

acknowledge this argument, but claim that deposition testimony supports that

Mr. Peek, Mr. Maslamani, and several other county employees were entrusted with

final policymaking authority over the PPIP.[7]  (Pl. Resp. to Def. MSJ, at 9.)

Plaintiffs here have not shown that Peek or Maslamani had final

policymaking authority over the PPIP sufficient to hold Defendant liable.  First,

final policymaking authority does not vest where an official's decisions are subject

to meaningful administrative review.  Quinn v. Monroe Cty., 330 F.3d 1320, 1325

(11th Cir. 2003).  The program procedures provide for a review of an individual's

dismissal if she believes she was dismissed without due cause.  Plaintiffs do not

present any evidence or credible support that this procedure for review of a

dismissal fails to constitute a meaningful administrative review.  Second, state and

local law, including the state constitution, state statutory law, or local ordinances,

determines whether a particular official has final policymaker authority for § 1983

purposes.  Cooper, 403 F.3d at 1221.  Plaintiffs, however, do not point to any state

---

[7]  Plaintiffs also argue that because the PPIP program procedures were revised to remove the setback requirement, this is evidence that Plaintiffs were discontinued from the program in retaliation for their open criticism of the program's setback policy.  Plaintiffs' evidence, however, is insufficient to show that there was a custom or policy of Fulton County in place sufficient to attribute Peek and Maslamani's actions to Fulton County.

or local law giving either Peek or Maslamani, or any other county employee implicated in this action, final policymaking authority over dismissals from the PPIP, and they do not refute Defendant's argument that a meaningful review was available for Plaintiffs' dismissal.[8]  Because they are trying to hold Fulton County liable for the acts of its employees, Plaintiffs "ha[ve] the burden to show that a deprivation of constitutional rights occurred as a result of an official government policy."  Plaintiffs fail to make this showing.  Because the actions of Peek and Maslamani cannot be attributed to Fulton County, Plaintiffs' First Amendment claims under § 1983 against Fulton County for their termination from the program

---

[8]  In their Response, Plaintiffs cite the deposition testimony of Peek and Upshaw as evidence that Maslamani was the "final decision maker as to the termination and the policy of verifying accuracy of setbacks by measuring."  (Pl. Resp. to Def. MSJ, at 9.)  Plaintiffs have not, however, filed the deposition testimony of these two witnesses with the Court, despite Defendant's July 31, 2006, request for them to do so.  (Request to File Original Discovery [28].)  The Court also contacted Plaintiffs' counsel by telephone on December 8, 2006 to request the depositions, and none were filed.  This evidence, therefore, is not properly before the Court.  Without it, the Court finds that there is insufficient evidence on the issue of whether Maslamani had final policymaking authority over the PPIP.  Even if Plaintiffs could point to state or local law indicating that Maslamani did have final policymaking authority over the PPIP, Plaintiffs have not shown why the provision for a review of dismissal does not constitute meaningful administrative review.

fail.  Defendant's motion for summary judgment on Plaintiffs' § 1983 claim is

therefore granted.[9]

      D.      <u>Plaintiffs' Remaining State Law Claims</u>

Defendant also asks this Court to decline supplemental jurisdiction over

Plaintiffs' state law claims and to dismiss this action if its motions for summary

judgment on Plaintiffs' federal claims are granted.  (Def. MSJ, at 11.)  "[A] district

court[] may decline to exercise supplemental jurisdiction over a [state law]

claim . . . if . . . the district court has dismissed all claims over which it has original

jurisdiction . . . ."  28 U.S.C. § 1367(c).  "The decision on [whether to retain

jurisdiction over the state-law claims] should be and is vested in the sound

discretion of the district court."  <u>Rowe v. City of Fort Lauderdale</u>, 279 F.3d 1271,

1288 (11th Cir. 2002).  <u>See generally</u> <u>United Mine Workers of Am. v. Gibbs</u>, 383

U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial,

---

[9] The Court notes there is no evidence Plaintiffs were ever prohibited from expressing their criticism of the program as it related to setback measurements. The record shows that the county's decision to eliminate Plaintiffs from the program was based on Plaintiffs' refusal to make setback measurements–not Plaintiffs' expression of their opinions.  The record shows further that Defendant gave Plaintiffs notice that they would be eliminated if they did not perform the measurements required.

even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

Considering the nature of Plaintiffs' two state-law claims, and Plaintiffs' failure to respond to Defendant's request that this Court decline supplemental jurisdiction, the Court finds the relevant factors counsel against retaining supplemental jurisdiction over Plaintiffs' state-law based claims.

**III.    CONCLUSION**

Accordingly,

Defendant Fulton County's Motion for Summary Judgment [29] on Plaintiff's federal claims is **GRANTED**.  Plaintiffs' state-law claims are dismissed without prejudice.


**SO ORDERED** this 15th day of December, 2006.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE